

# 09 CV 8261

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |  |
|---|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § | | |
| Plaintiff, | § § | | |
| v. | § § | **Civil Action No.** |  |
| **IRWIN BOOCK, STANTON B. J. DEFREITAS, NICOLETTE D. LOISEL, ROGER L. SHOSS and JASON C. WONG,** | § § § § § § § | | ECF CASE |
| Defendants; and | § § | | |
| **BIRTE BOOCK and 1621566 ONTARIO, INC., a Corporation,** | § § § | | |
| Relief Defendants. | § § § | | |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges:

### SUMMARY OF ALLEGATIONS

1.      This case involves a scheme effected between November 2003 through at least mid-2007 by Irwin Boock ("Boock"), Stanton B.J. DeFreitas ("DeFreitas"), Nicolette D. Loisel ("Loisel"), Roger L. Shoss ("Shoss"), and Jason C. Wong ("Wong") to hijack dozens of defunct publicly-traded corporations, or their identities, for use by private corporations passing themselves off as the defunct publicly-traded corporations, and to offer and sell their securities in violation of the antifraud and registration requirements of the federal securities laws.

2.      Boock conceived of the scheme in late 2003.

3.     Beginning in November 2003, Boock recruited Shoss and Loisel, two Houston-based attorneys, to handle the paperwork required to effect corporate hijackings, including submitting false documentation to Secretaries of State, the Standard & Poor's CUSIP Service Bureau, transfer agents, and Nasdaq Corporate Data Operations (commonly known as "Nasdaq Reorganization"), as detailed further herein; and to provide opinion letters falsely representing that offerings of securities by the hijacked or hijacking corporations qualified for exemption under Regulation D, Rule 504 [17 C.F.R. § 230.504] from the registration requirements of Section 5 of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77e]. Shoss also acted as middleman for Boock in arranging the sale of the hijacked shell companies to buyers. Boock subsequently decided to incorporate his own transfer agency and turned to Wong, a computer software expert, and DeFreitas, a financial consultant and associated person of a now-defunct registered broker-dealer in the United States, to incorporate and operate the Toronto transfer agency, Select American Transfer Company ("SAT"), and facilitate other corporate hijackings.

4.     From November 2003 through March 2006, Shoss and Loisel effected at least 22 corporate hijackings on behalf of Boock and issued at least 28 bogus Rule 504 opinion letters resulting in the issuance of approximately 223 million shares. The opinion letters contain deliberately misleading factual statements and conclusions of law.

5.     From November 2003 through June 2007, Boock, Wong, and DeFreitas, using a variety of aliases, mailbox addresses, and telephone numbers to hide their roles, effected at least another 23 corporate hijackings through SAT and issued and sold more than seven billion shares. Boock, Wong, and DeFreitas also sold shares into the secondary market.

6.     By engaging in the transactions, acts, practices, and courses of business alleged herein, defendants Boock, Wong, DeFreitas, Shoss and Loisel (referred to herein individually

and collectively as Defendants) knowingly violated the antifraud and registration provisions of the federal securities laws. Boock also violated an existing penny stock bar imposed against him under Section 15(b)(6) of the Exchange Act [15 U.S.C. §78o] in a prior settled administrative proceeding instituted by the Commission in 2002.

## JURISDICTION

7.      This Court has jurisdiction of this action pursuant to Sections 20 and 22(a) of the Securities Act [15 U.S.C. §§ 77t, 77v(a)], and Sections 21(d) and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d) and 78aa].

8.      The hijackers made use of the means and instrumentalities of interstate commerce or of the mails in connection with the acts, practices, and courses of business alleged herein.

## DEFENDANTS

9.      Irwin Boock, age 55, born Irwin Lawrence Krakowsky, is a Canadian citizen and resides in Toronto, Ontario, Canada. Boock used the identity of a living person, Alex Kaplun, as well as aliases, including John Sparrow, John Carson, and David Watson, in the scheme. The Commission previously sued Boock in *SEC v. Leah Industries, Inc.*, et al., No. 00-B-1921 (D. Colo. filed September 28, 2000) ("*Leah Industries*"). On November 22, 2002, a consent judgment was entered against Boock in that action pursuant to which he was permanently enjoined from violating Section 17 of the Securities Act [15 U.S.C. § 77q] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder and ordered to disgorge $379,619 and pay a civil penalty under Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act of $50,000. Boock has never paid the monetary relief. On December 6, 2002, shortly after the judgment in *Leah Industries*, the Commission instituted a

settled administrative proceeding against Boock under Exchange Act Section 15(b)(6) pursuant to which he was barred from participating in any offering of a penny stock.

10.     Jason C. Wong, age 32, is a Canadian citizen and resides in Markham, Ontario. Wong used the aliases George Anderson and John Sparrow in the scheme. During the relevant period, Wong was the chief executive officer, president, and a director of a software and business solutions company in Toronto, Online Database Solutions, Inc., that was quoted in the pink sheets.

11.     Stanton B.J. DeFreitas, age 33, is a dual citizen of Canada and St. Vincent and the Grenadines and resides in Toronto, Ontario. He used the aliases John Sparrow and Derek Mason and the identities of two living persons, Nathan Rogers and Amy Giles, in the scheme. During the relevant period, he held a Masters of Business Administration, was a Canadian Certified Financial Consultant, and provided accounting and business consulting services, admittedly specializing in the formation of offshore entities. In late 2006, DeFreitas became an associated person of a now defunct broker dealer in the United States, Franklin Ross, Inc.

12.     Roger L. Shoss, age 64, is a citizen of the United States and resides in Houston, Texas. He has been a licensed attorney in Texas for approximately 30 years. During the relevant period, he operated as a solo practitioner specializing in corporate and securities law.

13.     Nicolette D. Loisel, age 52, is a citizen of the United States and resides in Houston, Texas. She has been a licensed attorney in Texas for approximately 27 years. She has specialized in corporate and securities law. Beginning in or around 2003, Shoss contracted Loisel to perform services in connection with the scheme.

**RELIEF DEFENDANTS**

14.     Birte Boock ("Birte"), age 62, is a citizen of Canada and resides in Toronto, Ontario. She is Boock's wife. The Commission previously sued Birte in *Leah Industries*. On November 22, 2002, a consent judgment was entered against Birte in that action pursuant to which she was permanently enjoined from violating Section 17 of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder and ordered to pay a civil penalty of $50,000 under Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act. Birte has never paid the monetary relief.

15.     1621566 Ontario, Inc. is a company incorporated in Ontario. Throughout the relevant period up to the present, the company has listed Birte as its president, secretary, and director.

**HIJACKED OR HIJACKING COMPANIES**

16.     Advanced Growing Systems, Inc. [FL] is a Florida corporation formerly known as The BigHub.com, Inc., which the hijackers incorporated on July 8, 2005 under the same name as an inactive, publicly traded company also incorporated in Florida. The newly-incorporated corporation usurped the ticker symbol of the inactive corporation ("BHUB"), and issued purportedly publicly traded shares under that ticker symbol. On discovering the fraud, management of the inactive corporation publicly challenged the hijacking and ultimately restored to it the use of its BHUB ticker symbol. The hijacking entity then changed its name to Advanced Growing Systems. Its shares are not currently publicly traded.

17.     Advanced Growing Systems, Inc. [NV] is a Nevada corporation. It resulted from the reverse merger of a Nevada corporation into a California corporation effective June 20, 2006. The California entity had been incorporated under the name PCC Group, Inc. on July 6,

2005 by the hijackers using the same name as a then-defunct publicly traded company also incorporated in California. The merged entity changed its name to Advanced Growing Systems, Inc., and changed the state of domicile from California to Nevada. The CUSIP number and trading symbol associated with the California corporation transferred to the Nevada corporation. The company registered its common stock under Exchange Act Section 12(g) [15 U.S.C. § 78l] in 2007. As of September 1, 2009, the company's common stock was quoted on the Pink OTC Markets and OTCBB (symbol "AGWS").

18.     AEI Transportation Holdings, Inc. is a Nevada corporation formerly known as XO Logic Inc., which the hijackers reinstated on June 6, 2005 without authority. The name was changed to Doll Technology Group, Inc. and then to AEI Transportation Holdings, Inc. As of September 1, 2009, the company's common stock was quoted on the Pink OTC Markets under the former name of Doll Technology Group, Inc. (symbol "DTGP"), had market makers, and was eligible for the piggyback exemption of Exchange Act Rule 15c2-11(f)(3) [17 C.F.R. § 240.15c2-11(f)(3)].

19.     Aerofoam Metals, Inc. is a Delaware corporation formerly known as TAM Restaurants, Inc., which the hijackers incorporated on March 20, 2006 under the same name as a then-defunct, publicly traded company also incorporated in Delaware. The fact of the hijacking became publicly known during a revocation proceeding instituted by the Commission under Exchange Act Section 12(j) in 2007 against the originally incorporated TAM Restaurants for failure to file periodic and annual reports. As of September 1, 2009, the company's common stock traded in the grey markets (symbol "AFML").

20.     Andros Island Development Corporation is a Nevada corporation formerly known as KIMG Management Group, Inc., which the hijackers incorporated on July 15, 2004 under the

same name as a then-defunct, publicly traded company also incorporated in Nevada. On March 13, 2008, the Commission suspended trading in the securities of Andros Island. As of September 1, 2009, the company's common stock traded in the grey market (symbol "AVPJ").

21.     The Alcar Chemicals Group, Inc. is a Delaware corporation formerly known as Birman Managed Care, Inc., which the hijackers incorporated on July 6, 2005 under the same name as a then-defunct, publicly traded company also incorporated in Delaware. As of September 1, 2009, the company's common stock traded in the grey market (symbol "ACMG").

22.     Asia Telecom Ltd. is a California corporation formerly known as Jalate Ltd., which the hijackers incorporated on February 14, 2006 under the same name as a then-defunct, publicly traded company also incorporated in California. As of September 1, 2009, the company's common stock was quoted on the Pink OTC Markets (symbol "ATLJ").

23.     Asante Networks, Inc. is a Delaware corporation formerly known as Pacific Chemical, Inc., which the hijackers incorporated on February 10, 2005 under the same name as a then-defunct, publicly traded company also incorporated in Delaware. On March 13, 2008, the Commission suspended trading in the securities of Asante Networks. As of September 1, 2009, the company's common stock traded in the grey market (symbol "ASTN").

24.     Bicoastal Communications, Inc. is a Delaware corporation formerly known as The Pathways Group, Inc., which the hijackers incorporated on April 6, 2005 under the same name as a then-defunct company also incorporated in Delaware. During the relevant period, the company's common stock was quoted on the Pink OTC Markets (symbol "BCLC").

25.     Brekkford International Corp. is a Delaware corporation formerly known as California Cyber Design, Inc., which the hijackers reinstated on August 8, 2004 without authorization. The company registered its common stock under Exchange Act Section 12(g) in

2007. As of September 1, 2009, the company's common stock was quoted on the Pink OTC Markets and OTCBB (symbol "BFDI").

26.     Cavico Corp. is a Delaware corporation formerly known as Laminaire Corporation, which the hijackers incorporated on September 13, 2004 under the same name as a then-defunct, publicly traded company also incorporated in Delaware. As of September 1, 2009, 2009, the company's common stock was quoted on the Pink OTC Markets and the OTCBB (symbol "CVIC").

27.     China Adnet Enterprises Inc. is a California corporation formerly known as Baker Communications Inc., which the hijackers incorporated on July 14, 2005 under the same name as a then-defunct publicly traded company also incorporated in California. As of September 1, 2009, the company's common stock was quoted on the Pink OTC Markets (symbol "CAEJ"), had market makers, and was eligible for the piggyback exemption of Exchange Act Rule 15c2-11(f)(3).

28.     Complete Care Medical, Inc. is a Delaware corporation formerly known as PacificAmerica Money Center, Inc., which the hijackers incorporated on February 10, 2005 under the same name as a then-defunct, publicly traded company also incorporated in Delaware. On March 13, 2008, the Commission suspended trading in the securities of Complete Care Medical. As of September 1, 2009, the company's common stock traded in the grey market (symbol "CCMI").

29.     El Alacran Gold Mine Corp. is a Delaware corporation formerly known as Pawnbroker.com, which the hijackers incorporated on April 6, 2005 under the same name as a then-defunct, publicly traded company also incorporated in Delaware. On March 13, 2008, the

Commission suspended trading in the securities of El Alacran. As of September 1, 2009, the company's common stock traded in the grey market (symbol "EAGM").

30.     Extreme Fitness, Inc. is a Nevada corporation formerly known as Long Lake Energy Corp., which the hijackers incorporated on September 14, 2004 under the same name as a then-defunct, publicly traded company also incorporated in Delaware. On March 13, 2008, the Commission suspended trading in the securities of Extreme Fitness. As of September 1, 2009, the company's common stock traded in the grey market (symbol "EXTF").

31.     Gaming Transactions, Inc. is a Delaware corporation formerly known as Advanced Voice Technologies, Inc., which the hijackers incorporated on May 17, 2004 under the same name as a then-defunct, publicly traded company also incorporated in Delaware. On March 13, 2008, the Commission suspended trading in the securities of Gaming Transactions. As of September 1, 2009, the company's common stock traded in the grey market (symbol "GGTS").

32.     Innolife Pharma, Inc. is a Delaware corporation formerly known as Balfour Maclaine Corp., which the hijackers incorporated on November 21, 2005 under the same name as a then-defunct, publicly traded company also incorporated in Delaware. As of September 1, 2009, the company's common stock was quoted on the Pink OTC Markets (symbol "INNP"), had market makers, and was eligible for the piggyback exemption of Exchange Act Rule 15c2-11(f)(3).

33.     Interage Ltd. is a Delaware corporation formerly known as Ambassador Eyewear Group, Inc., which the hijackers incorporated on March 11, 2004 under the same name as a then-defunct, publicly traded company also incorporated in Delaware. During the relevant period, the company's stock was quoted on the Pink OTC Markets (symbol "ITGJ").

34.     International Energy Ltd. is a California corporation formerly known as Pacific Coast Apparel, which the hijackers incorporated on April 7, 2005 under the same name as a then-defunct company also incorporated in California. During the relevant period, the company's common stock was quoted on the Pink OTC Markets (symbol "ILGL").

35.     KSW Industries, Inc. is a Nevada corporation formerly known as Kay Merchandising International Ltd., which the hijackers incorporated on July 15, 2004 under the same name as a then-defunct company incorporated in Delaware. The Commission suspended trading in the securities of KSW on April 6, 2006. As of September 1, 2009, KSW Industries' securities traded in the grey market (symbol "KSWJ").

36.     LeaseSmart, Inc. is a California corporation formerly known as Xxsys Technologies, Inc., which the hijackers incorporated on July 6, 2005 under the same name as a then-defunct company also incorporated in California. As of September 1, 2009, the company's common stock was quoted on the Pink OTC Markets (symbol "LSMJ").

37.     Level Vision Electronics Ltd. is a Delaware corporation formerly known as EcoTyre Technologies, Inc., which the hijackers incorporated on October 25, 2005 under the same name as a then-defunct company also incorporated in Delaware. As of September 1, 2009, the company's common stock was quoted on the Pink OTC Markets (symbol "LVLV"), had market makers, and was eligible for the piggyback exemption of Exchange Act Rule 15c2-11(f)(3).

38.     Life Exchange Inc. is a Nevada corporation formerly known as Technology Enterprises, Inc., which the hijackers reinstated on September 3, 2004 without authorization. The company registered its common stock under Exchange Act Section 12(g) in 2007. As of September 1, 2009, the company's common stock was quoted on the Pink OTC Markets and

OTC Bulletin Board ("OTCBB") (symbol "LFXG"), had market makers, and was eligible for the piggyback exemption of Exchange Act Rule 15c2-11(f)(3).

39.     Lotta Energy Acquisition Corp. is a Florida corporation formerly known as Ensec International, Inc., which the hijackers incorporated on March 3, 2006 under the same name as a then-defunct company also incorporated in Florida. As of September 1, 2009, the company's common stock was quoted on the Pink OTC Markets (symbol "LCOL"), had market makers, and was eligible for the piggyback exemption of Exchange Act Rule 15c2-11(f)(3).

40.     Magellan Energy Ltd. is a Delaware corporation formerly known as The Eastwind Group, Inc., which the hijackers incorporated on November 8, 2005 under the same name as a then-defunct company also incorporated in Delaware. As of September 1, 2009, the company's common stock was quoted on the Pink OTC Markets (symbol "MGLG"), had market makers, and was eligible for the piggyback exemption of Exchange Act Rule 15c2-11(f)(3).

41.     Marinas International Inc. is a Delaware corporation formerly known as Brazos Sportswear Inc., which the hijackers incorporated on July 8, 2005 under the same name as a then-defunct company also incorporated in Delaware. As of September 1, 2009, Marinas International's securities traded in the grey market (symbol "MNSI").

42.     Microlink Solutions Inc. is a Delaware corporation formerly known as Universal Seismic Associates, Inc., which the hijackers incorporated on June 22, 2006 under the same name as a then-defunct, publicly traded company also incorporated in Delaware. State records show that the current corporate name is Microlink Solutions, but, as of September 1, 2009, the stock traded in the grey market under a prior name, Pocketop Corp. (symbol "PKTO").

43.     The Motion Picture Group is a Florida corporation formerly known as ABS Group, Inc., which the hijackers reinstated on May 17, 2004 without authorization. As of

September 1, 2009, The Motion Picture Group's securities trade in the grey market under the symbol "MPRG."

44.     Mvive Inc. is a Nevada corporation. It resulted from the reverse merger of a Florida corporation into a Nevada corporation effective December 14, 2004. The Florida entity had been incorporated under the name Channel American Broadcasting, Inc. on November 6, 2003 by the hijackers. Channel American Broadcasting, Inc. was the same name as a then-defunct, publicly traded company also incorporated in Florida. Since the merger was effected for the sole purpose of changing the corporate domicile from Florida to Nevada, the CUSIP number and trading symbol associated with the Florida corporation incorporated by the hijackers transferred automatically to the Nevada corporation. The merged entity then changed its name to Mvive, Inc. Mvive registered a class of securities under Section 12(g) of the Exchange Act in late 2005, and then filed a Form 15 in March 2006 terminating the registration. On March 13, 2008, the Commission suspended trading in the securities of Mvive. As of September 1, 2009, the company's common stock traded in the grey market (symbol "MVIV").

45.     Natural Medicines Ltd. is a Delaware corporation formerly known as Imark Technologies, Inc., which the hijackers incorporated on August 16, 2006 under the same name as a then-defunct company also incorporated in Delaware. Although its name was later changed to Pharm Control Ltd. and then Natural Medicines Ltd., as of September 1, 2009, its common stock was still quoted on the Pink OTC Markets under the name Pharm Control (symbol "PMCL").

46.     NutriOne Corp. is a Florida corporation formerly known as Biscayne Apparel, Inc., which the hijackers incorporated on July 7, 2005 under the same name as a then-defunct company also incorporated in Florida. As of September 1, 2009, the company's common stock was quoted on the Pink OTC Markets (symbol "NNCP").

47.     Packaged Home Solutions is a Florida corporation formerly known as TCPI Inc., which the hijackers incorporated on March 22, 2006 under the same name as a then-defunct company also incorporated in Florida. On September 26, 2006, the hijacking company filed a Form 15 with the Commission terminating the registration of the hijacked issuer's securities under Exchange Act Section 12(g). During the relevant period, the hijacking company's securities were quoted on the Pink OTC Markets (symbol "PKGH").

48.     Paramount Gold and Silver Corporation is a Delaware corporation formerly known as PanelMaster Corporation, which the hijackers incorporated on March 31, 2005 under the same name as a then-defunct, publicly traded company also incorporated in Delaware. The company registered its common stock with the Commission under Exchange Act Section 12(g) in 2006. The stock is now registered under Exchange Act Section 12(b) [15 U.S.C. § 78l]. On March 13, 2008, the Commission suspended trading in the securities of Paramount Gold and Silver. As of September 1, 2009, Paramount Gold and Silver's securities were listed on the NYSE Euronext (symbol "PZG").

49.     Reality Racing, Inc. is a Nevada corporation formerly known as Yellowbubble.com, Inc., which the hijackers reinstated on June 6, 2005 without authorization. As of September 1, 2009, Reality Racing's securities traded in the grey market (symbol "RRGI").

50.     Regal Technologies, Inc. is a Utah corporation formerly known as C&S Research International, Inc., which the hijackers incorporated on September 3, 2004 under the same name as a then-defunct, publicly traded company also incorporated in Utah. On March 13, 2008, the Commission suspended trading in the securities of Regal Technologies. As of September 1, 2009, the company's common stock traded in the grey markets (symbol "RGTN").

51.     Remington Ventures, Inc. is a Nevada corporation formerly known as Medical Home Supplies, Inc., which the hijackers incorporated on March 12, 2004 under the same name as a then-defunct, publicly traded company incorporated in Utah.  On March 13, 2008, the Commission suspended trading in the securities of Remington Ventures.  As of September 1, 2009, the company's common stock traded in the grey market (symbol "REMV").

52.     Straight Up Brands, Inc. is a Delaware corporation formerly known as Pacific Engineering Systems, Inc., which the hijackers incorporated on February 10, 2005 under the same name as a then-defunct, publicly traded company also incorporated in Delaware.  On March 13, 2008, the Commission suspended trading in the securities of Straight Up Brands.  As of September 1, 2009, the company's common stock traded in the grey market (symbol "STRU").

53.     UDS Group, Inc. is a Nevada corporation formerly known as Blini Hut, Inc., which the hijackers reinstated on January 26, 2005 without authorization.  As of September 1, 2009, the company's common stock was quoted on the Pink OTC Markets (symbol "UDSG"), had market makers, and was eligible for the piggyback exemption of Exchange Act Rule 15c2-11(f)(3).

54.     United Environmental Energy Corp. is a Delaware corporation formerly known as Eagle Finance Corp., which the hijackers incorporated on November 8, 2005 under the same name as a then-defunct company also incorporated in Delaware.  As of September 1, 2009, the company's common stock was quoted on the Pink OTC Markets (symbol "UTEM").

55.     Uptrend Corp. is a Delaware corporation formerly known as Massimo da Milano, Inc., which the hijackers reinstated on November 25, 2003 without authorization.  As of September 1, 2009, the company's common stock was quoted on the Pink OTC Markets (symbol

"UPCP"), had market makers, and was eligible for the piggyback exemption of Exchange Act Rule 15c2-11(f)(3).

56.    VShield Software Corp. is a Delaware corporation formerly known as All for a Dollar, Inc., which the hijackers incorporated on July 16, 2004 under the same name as a then-inactive publicly traded company also incorporated in Delaware. As of September 1, 2009, the company's common stock was quoted on the Pink OTC Markets (symbol "VSHE"), had market makers, and was eligible for the piggyback exemption of Exchange Act Rule 15c2-11(f)(3).

57.    World Hockey Association is a Florida corporation formerly known as Kaplan Industries, Inc., which the hijackers incorporated on September 9, 2003 under the same name as a then-defunct company also incorporated in Florida. As of September 1, 2009, the company's common stock was quoted on the Pink OTC Markets (symbol "WHKA").

58.    WW Energy, Inc. is a Delaware corporation formerly known as Alya International Inc., which the hijackers incorporated on March 12, 2004 under the same name as a then-defunct, publicly traded company also incorporated in Delaware. As of September 1, 2009, the company's common stock was quoted on the Pink OTC Markets (symbol "WWNG"), had market makers, and was eligible for the piggyback exemption of Exchange Act Rule 15c2-11(f)(3).

## OTHER RELEVANT ENTITY

59.    Select American Transfer Company, formerly located in Toronto, was incorporated by Boock in Delaware and registered as a transfer agent under Section 17(a) of the Exchange Act [15 U.S.C. §78q] with the Commission in April 2005. A transfer agency is an agency (usually a bank) that is appointed by a corporation to keep records of its stock and bond owners and to resolve problems about certificates. Non-bank transfer agencies must register

with the SEC and are subject to SEC rules and regulations that establish minimum performance standards regarding the issuance of share certificates and related recordkeeping and reporting requirements.

60.     Wong and DeFreitas operated SAT jointly at least until September 2005, when Wong purportedly resigned. DeFreitas continued operating SAT through at least June 2007, using the identities of Amy Giles and Nathan Rogers and the alias Derek Mason in his dealings with third parties, including the Commission. SAT's office was first located in a condominium owned by DeFreitas and then a townhouse owned by DeFreitas's mother. SAT's last filing with the Commission was September 5, 2006. SAT ceased operations in April 2007.

## STATEMENT OF FACTS

### A.     PROCESS BY WHICH HIJACKERS HIJACKED DEFUNCT PUBLICLY-TRADED CORPORATIONS

61.     Each hijacking followed the same pattern. The hijackers first identified publicly-traded corporations whose corporate charters had been suspended or revoked for several years. The hijackers identified suitable candidates by scanning the Pink OTC Markets website for inactive corporations whose securities were still quoted but which lacked current contact, personnel, and transfer agent information. The point was to identify publicly-traded corporations whose former management was unlikely to surface and challenge its hijacking, and with respect to whose liabilities the applicable statutory period of limitations either had or was about to run.

62.     The hijackers then confirmed the corporations' status with the applicable Secretaries of State. If an inactive corporation was still listed but delinquent in some respect, such as for non-payment of fees or taxes or failure to make annual filings, the hijackers filed paperwork with the state falsely representing that the shareholder, officer, or director identified therein, *e.g.*, Boock (using an alias) or Wong, was duly authorized to revivify the corporation.

63.     More frequently, the hijackers found inactive corporations that were void in the state of incorporation – and thus could not be revivified – but whose names were now available for use by others. The hijackers simply incorporated a new corporation using the name of the void corporation.

64.     Under either method, Boock and his cohorts did the following in rapid succession:

(a)     Immediately changed the name of the company by filing with the applicable Secretary of State a Certificate of Amendment of Articles of Incorporation along with a corporate board consent and shareholder consent;

(b)     Generally effected a reverse stock split to reduce the number of outstanding shares. Reverse stock splits typically called for the exchange of 1,000 old shares for 1 new share, thereby greatly reducing the number of outstanding shares. Coupled with the subsequent issuance of additional new shares, the split greatly diluted the value of old shares relative to new shares and substantially diluted the existing shareholders' ownership interest;

(c)     Improperly obtained a new CUSIP number from the Standard & Poor's CUSIP Service Bureau to reflect the name change, attaching in support the Certificate of Amendment by which the company changed its name. A CUSIP number is a 9-character identifier that uniquely identifies the type of security and its issuer using a common numbering system designed to facilitate the accurate and efficient clearance and settlement of securities;

(d)   Prepared a fraudulent Transfer Agent Verification form ("TAVF") for signature by the transfer agent for each purportedly revivified or newly incorporated company, identifying the name, CUSIP number, and ticker symbol of the defunct or void company and the purported new name and new CUSIP symbol, and representing, if applicable, that the company's shares had undergone a reverse stock split;

(e)   Improperly obtained a new ticker symbol from Nasdaq Reorganization, falsely representing that the originally incorporated, publicly-traded company had changed its name, effected a stock split (if applicable) and obtained a new CUSIP number; attaching the signed TAVF and certifications from the Secretary of State for the relevant actions.   Upon application, Nasdaq Reorganization assigns a ticker symbol for identification purposes to each class of an issuer's publicly-traded securities.   A ticker symbol is a short abbreviation used to uniquely identify publicly traded shares of a particular stock on a particular stock market.  A stock symbol may consist of letters, numbers or a combination of both.

65.   During the relevant period, Nasdaq Reorganization posted newly issued ticker symbols on its website daily.  The Depository Trust Company (which provides clearing and settlement services) and broker dealers monitored the daily postings and noted changes in their internal records.  The ticker symbol changes had the effect of changing to the new ticker symbol and corporate name all outstanding shares in the defunct or void corporations.

66.    As discussed below, the corporations would then offer or issue new, unrestricted and unregistered shares into the market place in violation of Section 5 of the Securities Act.

67.    The Financial Industry Regulatory Authority ("FINRA") (which regulates all securities firms doing business in the U.S.) prohibits a member from initiating or resuming the quotation of certain non-NASDAQ over-the-counter securities in a quotation medium unless the member has demonstrated compliance with the requirements of Exchange Act Rule 15c2-11(f)(3) [17 C.F.R. § 240.15c2-11(f)(3)].  FINRA Rule 6740 [now Rule 6440] requires that the broker-dealer review and maintain in its records the information set forth by Exchange Act Rule 15c2-11 regarding the security and issuer.  For example, when a new issuer wants its securities to be quoted on the pink sheets, the broker-dealer files a Form 211 with FINRA together with the information required under Exchange Act Rule 15c2-11(a) at least three business days before the quotation is published or displayed.  But once the broker-dealer has filed a Form 211 and it is cleared by FINRA, the security may become "piggyback eligible" if its quoting activity meets the continuity requirements of Exchange Act Rule 15c2-11(f)(3), which sets forth frequency-of-quotation requirements that, if met, allow broker-dealers to continue to quote the security without further filings from the issuer.

68.    Defendants improperly relied upon the so-called piggyback exception under Rule 15c2-11(f)(3) based on FINRA's prior clearance of a Form 211 filed with respect to a now defunct or void corporation so that quotation on the pink sheets could resume immediately without providing any of the information normally required under Exchange Act Rule 15c2-11(f)(3) for a new corporation.  The consistent failure to file Form 211s by the hijacked corporations is further evidence that the hijackers intentionally assumed the identity of defunct corporations.

69.     In many cases the hijackers changed the hijacked company's name again, and sometimes two or three more times, resulting in additional changes to CUSIP numbers and trading symbols that further complicated investigation.

## B.     HIJACKINGS INVOLVING BOOCK, SHOSS, AND LOISEL

70.     Boock informed Shoss in 2003 of the steps outlined above for creating shell companies that could then be sold to third parties interested in reverse merging with publicly-traded companies.

71.     Shoss then approached Loisel to subcontract her to perform the above-described work. Shoss explained the process to Loisel and provided her with a packet of documents obtained from Boock which served as templates for effecting illegal hijackings. Wong further assisted Loisel in understanding the process.

72.     On an ongoing basis, Boock supplied Shoss with ticker symbols of corporations which he had spotted on the Pink OTC Markets as suitable candidates for the processes outlined above.

73.     After confirming that a company was either defunct or void, and that it had been non-operational for years, Loisel drafted and processed all the necessary paperwork, including the deceptive TAVF which she submitted to the transfer agent for signature and forwarded to Nasdaq Reorganization. Loisel knew that the TAVFs were fraudulent.

74.     Each of the corporate documents submitted to the relevant Secretary of State via Loisel were signed in the name of aliases of Boock, Wong or DeFreitas.

75.     Boock, with the involvement of Shoss and Loisel, hijacked at least 22 defunct publicly traded companies. The current and original names of the hijacked or hijacking corporations are listed below:

| Current Name | Name Usurped in Hijacking |
|---|---|
| AEI Transportation Holdings | XO Logic Inc. |
| Aerofoam Metals, Inc. | TAM Restaurants, Inc. |
| Andros Island Development Corp. | KIMG Management Group, Inc. |
| Asante Networks, Inc. | Pacific Chemical, Inc. |
| Brekford Communications, Inc. | California Cyber Design, Inc. |
| Cavico Corp. | Laminaire Corp. |
| Complete Care Medical, Inc. | PacifcAmerica Money Center, Inc. |
| El Alacran Gold Mining Corp. | Pawnbroker.com |
| Extreme Fitness, Inc. | Long Lake Energy Corp. |
| Gaming Transactions, Inc. | Advanced Voice Technologies, Inc. |
| Interage, Ltd. | Ambassador Eyewear Group, Inc. |
| Life Exchange, Inc. | Technology Enterprises, Inc. |
| The Motion Picture Group | ABS Group, Inc. |
| Mvive, Inc. | Amazing Technologies Corp. |
| Paramount Gold and Silver Corp. | PanelMaster Corp. |
| Reality Racing, Inc. | Yellowbubble.com |
| Regal Technologies, Inc. | C&S Research International, Inc. |
| Remington Ventures, Inc. | Medical Home Supplies, Inc. |
| Straight Up Brands, Inc. | Pacific Engineering Systems, Inc. |
| UDS Group, Inc. | Blini Hut, Inc. |
| Uptrend Corp. | Massimo da Milano, Inc. |
| WW Energy, Inc. | Alya International, Inc. |

76.     Loisel submitted detailed invoices to Shoss for work performed by her in issuing

bogus Rule 504 opinion letters and effecting the hijackings, invoicing him at least $455,000 for

services rendered, which he paid.

77.     Once the hijackings were effected, Shoss acted as middleman for Boock in selling

each hijacked or hijacking corporation, keeping a portion of the illicit sales proceeds and wiring

or transferring the balance directly or indirectly to Boock.

78.     For example, Shoss generated $175,000 from the sale of Brekford

Communications, Inc (f/k/a American Financial Holdings, Inc.) and $90,000 from the sale of

WW Energy (f/k/a Alya International, Inc.).

79.    Shoss transferred at least $480,000 to an HSBC Bank account in Toronto held by 1621566 Ontario, Inc., for which relief defendant Birte is the sole officer and director.

## C.    HIJACKINGS INVOLVING BOOCK, WONG, AND DEFREITAS

80.    Independent of those companies hijacked with the involvement of Shoss and Loisel, Boock hijacked at least another 21 companies with the involvement of Wong and DeFreitas.

81.    Boock, Wong, and DeFreitas incorporated new private corporations using the names of void publicly-traded corporations. They immediately changed the name of each newly-incorporated private entity, and then contacted the CUSIP Bureau falsely representing that an issuer to which a CUSIP number had previously been issued (*i.e.,* the void corporation) had changed its name and required a new CUSIP number.

82.    Once a new CUSIP number was obtained, SAT, Wong, and/or DeFreitas submitted false TAVFs to Nasdaq Reorganization to obtain a new ticker symbol. The false TAVFs referenced the defunct entity's former CUSIP number and ticker symbol, leading Nasdaq Reorganization to believe that the request pertained to a corporation to which it had already issued a ticker symbol and for which a Form 211 had already been submitted and cleared by FINRA. As a result of this deception, Nasdaq Reorganization assigned a new trading symbol for the entity as if it were the defunct company that had simply changed its name, and posted the ticker symbol change.

83.    The current and original names of the private companies that were hijacked by Boock, Wong, and DeFreitas using the names of void publicly-traded corporations are as follows:

| Current Name | Name Usurped in Hijacking |
|---|---|
| Advanced Growing Systems, Inc. [FL] | The BigHub.com, Inc. |
| Advanced Growing Systems, Inc. [NV] | PCC Group, Inc. |
| AEI Transportation Holdings[1] | XO Logic Inc. |
| Alcar Chemicals Group, Inc. | Birman Managed Care, Inc. |
| Asia Telecom Ltd. | Jalate Ltd. |
| Bicoastal Communications, Inc. | The Pathways Group, Inc. |
| China Adnet Enterprises Inc. | Baker Communications, Inc. |
| Innolife Pharma, Inc. | Balfour Maclaine Corp. |
| International Energy Ltd. | Pacific Coast Apparel, Inc. |
| KSW Industries, Inc. | Kay Merchandising International Ltd. |
| LeaseSmart, Inc. | Xxsys Technologies, Inc. |
| Level Vision Electronics Ltd. | EcoTyre Technologies, Inc. |
| Lotta Energy Acquisition Corp. | Ensec International, Inc. |
| Magellan Energy Ltd. | The Eastwind Group, Inc. |
| Marinas International Inc. | Brazos Sportswear Inc. |
| Microlink Solutions Inc. | Universal Seismic Associates, Inc. |
| NutriOne Corp. | Biscayne Apparel, Inc. |
| Packaged Home Solutions | TGPI, Inc. |
| Natural Medicines Ltd. | Imark Technologies, Inc. |
| United Environmental Energy Corp. | Eagle Finance Corp. |
| VShield Software Corp. | All for a Dollar, Inc. |
| World Hockey Association | Kaplan Industries, Inc. |

85.     Boock, Wong, and DeFreitas sought to conceal their individual involvement by using aliases and paying for services in cash.

86.     For example, nine hijacking issuers provided contact telephone numbers in the above-mentioned documents or on their websites a voice mail service with a Brooklyn, New York area code that were traceable to Boock. This service was paid for in cash by someone purporting to be Alex Kaplan, an alias used by Boock. Further, over 2,000 telephone calls were placed from Boock's Toronto phone numbers to the voice mail numbers from mid 2004 through mid 2006, indicating that Boock had the voicemail access codes to retrieve messages left for the

---

[1]   This is the one issuer hijacked with Shoss and Loisel's involvement that used SAT as its transfer agent. It therefore appears on both lists.

COMPLAINT
*SEC v. Irwin Boock, et al.*

hijacked corporations. Other hijacking issuers listed addresses or phone numbers linked to Boock, Wong, or DeFreitas.

## D.   UNREGISTERED AND FRAUDULENT OFFERINGS AND SALES OF SECURITIES

87. With respect to at least 19 of the issuers with which they were involved in hijacking, Shoss and Loisel drafted at least 28 bogus opinion letters opining that offerings of those issuers were exempt under Regulation D, Rule 504 from the registration requirements of Securities Act Section 5. Each letter generally represented that the issuer was not a reporting company under the Exchange Act and intended "to make an offering to a limited number of 'accredited investors' as defined in Regulation D, Rule 501(a), who reside or are domiciled in Texas and who purchase for investment in accounts . . . ." Each letter further stated, "it is our opinion that the shares are being issued in a transaction in accordance with the provisions of Rule 504 (Regulation D) and pursuant to Rules 139.16 and 139.19 of the Texas Administrative Code," that the offer and sale of the shares were not required to be registered under the Securities Act, and the share certificates could be issued without a restrictive legend. These letters contained deliberately misleading statements and conclusions of law because they were part of a scheme to defraud; Shoss and Loisel knew all the investors did not reside in Texas; and they knew the issuers had not complied with state law requirements as required by Regulation D.

88. The letters resulted in the issuance of approximately 223 million purportedly unrestricted shares.

89. Boock tasked Shoss and Loisel with preparing the opinion letters. Shoss provided Loisel with a template letter. The finished letters included an appendix which listed the purported accredited investors' names and addresses.

90.    Boock supplied the lists of subscribers. The lists included corporations whose listed addresses were not in Texas. The lists also included Texas corporations incorporated by Loisel at the request of Boock, Wong, and DeFreitas for the sole purpose of acting as conduits for the distribution of shares. Loisel then drafted the corporate documents authorizing the liquidating distributions of shares to the Texas corporations' shareholders. Loisel acknowledged knowing at the time that Boock (using the Kaplun alias), Wong and DeFreitas were the controlling shareholders of certain corporate subscribers.

91.    Loisel claims to have faxed each draft letter to Shoss, who would purportedly call her to approve her issuing the letter under his signature. Loisel's invoices to Shoss referenced the fact that she was drafting opinion letters. After signing Shoss's name, Loisel transmitted each letter to the issuer's transfer agent who issued shares per the terms of the legal opinions.

92.    Boock, DeFreitas, Wong each sold shares of the hijacked and hijacking corporations into the secondary market.

93.    DeFreitas directed Chudney DeFreitas, his cousin and a resident of Florida, to incorporate a company named For Better Living, Inc. and to open a trading account in the name of the corporation at a Scottrade branch in Florida. DeFreitas then sent her stock certificates which she deposited into the account. The staff traced trades in that account, using the ISP address, to Boock's e-mail address. Boock admits he traded in the account.

94.    Through the Scottrade account, Boock received and liquidated unregistered securities in at least five hijacked and hijacking corporations, including Grand Lux Inc. (predecessor to World Hockey Association Corp.); Asia Telecom; International Energy; Pocketop Corp. (predecessor to Microlink Solutions Inc.); and Pharm Control (predecessor to Natural Medicines Ltd.). The accounts show initial deposits of certificates followed by complete

liquidations effected through repeated incremental sales. Account records indicate Boock received at least $267,625 in 2007 alone from these liquidations.

95.     DeFreitas, through more than 50 trading accounts he controlled, received and liquidated unregistered securities in numerous hijacked or hijacking companies. The accounts show initial deposits of certificates followed by complete liquidations effected through repeated incremental sales. DeFreitas liquidated stock in Asia Telecom, BDW Holdings (predecessor to International Energy), Bighub.com (predecessor to Advanced Growing Systems), International Energy, LeaseSmart, Magellan Energy, Marinas International, Midland Baring (predecessor to Level Vision Electronics), NutriOne Corp., Pocketop Corp. (predecessor to Microlink Solutions), Pharm Control (predecessor to Natural Medicines), KSW Industries, El Apparel (predecessor to NutriOne Corp.), United Environmental Energy, and VShield Software.

96.     Most of DeFreitas's accounts were with the now-defunct New Jersey-based broker dealer Franklin Ross, in the names of 48 offshore corporations which DeFreitas controlled. DeFreitas duped Franklin Ross into entering into an employment contract with him pursuant to which he was designated an associated person of the firm and eligible to receive a commission on each trade in an account of any offshore investor which he referred to Franklin Ross. Thus, he duped Franklin Ross into paying him commissions on his own trades effected through accounts held in the names of corporations he controlled. Shares issued pursuant to the bogus legal opinions authored by Shoss and Loisel were deposited into the accounts, as were shares in hijacking issuers issued by SAT. DeFreitas liquidated shares in over 30 such issuers. He then directed the transfer of more than $2.2 million in proceeds from the sales to bank accounts in Toronto which he controlled.

97.     Wong received and liquidated unregistered securities of hijacked corporations through three accounts at RBC Bank in Toronto, to include shares in Asia Telecom, Baker Communications (predecessor to China Adnet), BDW Holdings (predecessor to International Energy), BigHub.com (predecessor to Advanced Growing Systems), Caribbean Developments (predecessor to VShield Software), China Adnet, Grand Lux (predecessor to World Hockey Association), International Energy, KDW Telecom (predecessor to KSW Industries), LeaseSmart, and Universal Seismic (predecessor to Microlink Solutions). The quantum of proceeds received by Wong remains to be determined.

### FIRST CLAIM FOR RELIEF
### Securities Fraud
### Violations of Section 10(b) of the
### Exchange Act and Rule 10b-5 Thereunder

Plaintiff Commission repeats and incorporates paragraphs 1 through 97 of this Complaint by reference as if set forth verbatim.

Boock, DeFreitas, Wong, Shoss, and Loisel, by engaging in the conduct described above, directly and indirectly, in connection with the purchase and sale of securities, and by the use of means or instrumentalities of interstate commerce or of the mails, or of the facilities of a national securities exchange, have:

(a)     employed devices, schemes or artifices to defraud;

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices or courses of business that have operated or will operate as a fraud and deceit upon other persons.

Boock, DeFreitas, Wong, Shoss, and Loisel engaged in the conduct described above intentionally, knowingly or with severe recklessness.

By reason of the foregoing acts and practices, Boock, DeFreitas, Wong, Shoss and Loisel violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

### SECOND CLAIM FOR RELIEF
### Securities Fraud
### Violations of Section 17(a) of the Securities Act

Paragraphs 1 through 97 are realleged and incorporated by reference.   As described above, Boock, DeFreitas, Wong, Shoss, and Loisel, acting knowingly, recklessly, or negligently in the offer or sale of securities, by use of means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)     employed devices, schemes, or artifices to defraud;

(b)     obtained money or property by means of untrue statements of a material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)     engaged in transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon the purchaser.

By reason of the foregoing acts and practices, Boock, DeFreitas, Wong, Shoss and Loisel violated and, unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### THIRD CLAIM FOR RELIEF
### Violation of a Commission Order
### and of Section 15(b)(6)(B)(i) of the
### Exchange Act, 15 U.S.C. § 78o(6)(B)

Paragraphs 1 through 97 are realleged and incorporated herein by reference. Between November 2003 until at least March 2007, Boock participated in numerous penny stock offerings by acting as a promoter, finder, consultant, agent or other person engaged in activities with respect to several issuers listed above for the purpose of the issuance or trading in a penny stock.

By reason of the foregoing, Boock directly violated, and unless immediately enjoined, will continue to violate the Commission's Administrative Order of December 6, 2002,[2] barring him from participating in any offering of a penny stock, "including as a promoter, finder, consultant, agent or other person who engages in activities . . . for the purposes of the issuance or trading in any penny stock." By so violating the Administrative Order, Boock also violates, and unless immediately enjoined, will continue to violate Section 15(b)(6)(B)(i) of the Exchange Act [15 U.S.C. § 78o(6)(B)].

### FOURTH CLAIM FOR RELIEF
### Offer or Sale of Unregistered Securities
### Violations of Securities Act Sections 5(a) and 5(c)

Paragraphs 1 through 97 are realleged and incorporated by reference. As described above, notwithstanding that there was no applicable exemption from the registration requirements of the federal securities laws, Boock, DeFreitas, Wong, Shoss, and Loisel:

(i)       made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell, though the use or medium of a prospectus or otherwise, securities as to which no registration statement was in effect;

---

[2]   *In the Matter of Birte Boock and Irwin Boock*, Securities and Exchange Commission Release No. 46952, Administrative Proceeding File No. 3-10960, "Corrected Order Instituting Administrative Proceedings, Making Findings, and Imposing Remedial Sanctions Pursuant to Section 15(b) of the Securities Exchange Act of 1934" dated Dec. 6, 2002.

(ii)    for the purpose of sale or delivery after sale, carried and/or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities as to which no registration statement was in effect; or

(iii)    made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

For the hijacked corporations listed above, no valid registration statement was filed or in effect with the Commission pursuant to the Securities Act and no exemption from registration existed with respect to the securities and transactions described in this complaint.

By engaging in the foregoing conduct, Boock, DeFreitas, Wong, Shoss and Loisel violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court enter judgments:

(i)    permanently enjoining Boock, DeFreitas, Wong, Shoss, and Loisel, pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)], from violating, directly or indirectly, Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Exchange Act Rule 10b-5;

(ii)    issue findings of fact and conclusions of law that Boock violated the Commission Order and Section 15(b)(6)(B)(i) of the Exchange Act as alleged above;

(iii)    permanently enjoining Boock from, direct or indirect, continuing violations of the Commission Orders and Section 15(b)(6)(B)(i) of the Exchange Act; and ordering future compliance with Commission orders;

(iv)    permanently enjoining Boock, DeFreitas, Wong, Shoss, and Loisel, pursuant to Section 20(b) of the Securities Act, from violating, directly or indirectly, Sections 5(a) and 5(c) of the Securities Act;

(v)    ordering Boock, DeFreitas, Wong, Shoss, and Loisel to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

(vi)    ordering Boock, DeFreitas, Wong, Shoss, and Loisel to disgorge, with prejudgment interest, the total illegal proceeds from the fraud;

(vii)    permanently enjoining Boock, Defreitas, Wong, Shoss, and Loisel from directly or indirectly participating in an offering of penny stock, as defined by Rule 3a51-1 under the Exchange Act [17 C.F.R. § 240.3a51-1], pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)];

(viii)    permanently enjoining Boock and Wong from acting as an officer or director of any issuer pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)];

(ix)    granting such other relief as the Court deems just or appropriate; and

(x)    retaining jurisdiction of this action in order to implement and carry out the terms of this order.

Dated this 28th day of September, 2009.

Respectfully submitted,

Of Counsel:
John S. Polise
Nina B. Finston
John J. Dempsey

_____

Justin Chretien
Paul W. Kisslinger (PK0764)
U.S. SECURITIES AND EXCHANGE
        COMMISSION
100 F Street, NE
Washington, D.C. 20549-4010
(202) 551-4953 (Chretien)
(202) 772-9245 (Fax)

Counsel for Plaintiff

Dated this 28th day of September, 2009.

Respectfully submitted,

_Pal W. K_____

Justin Chretien
Paul W. Kisslinger (PK0764)
U.S. SECURITIES AND EXCHANGE
          COMMISSION
100 F Street, NE
Washington, D.C. 20549-4010
(202) 551-4953 (Chretien)
(202) 772-9245 (Fax)

Counsel for Plaintiff

Of Counsel:
John S. Polise
Nina B. Finston
John J. Dempsey