UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
SECURITIES AND EXCHANGE COMMISSION,     :
                                        :
                   Plaintiff,           :
                                        :
          -v-                           :
                                        :     09 Civ. 8261 (DLC)
IRWIN BOOCK, STANTON B.J. DEFREITAS,    :
NICOLETTE D. LOISEL, ROGER L. SHOSS and :     OPINION AND ORDER
JASON C. WONG,                          :
                                        :
                   Defendants,          :
                                        :
               and                      :
                                        :
BIRTE BOOCK and 1621533 ONTARIO, INC.,  :
                                        :
               Relief Defendants.       :
                                        :
----------------------------------------X

APPEARANCES:

For the plaintiff:
Paul W. Kisslinger
United States Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549

For defendant Jason C. Wong:
Russell Cornelius Weigel, III
Edward Robert Averbuch
Law Office of Russell C. Weigel, III, P.A.
5775 Blue Lagoon Drive
Suite 100
Miami, FL 33126

Defendant Irwin Boock, pro se
500 Hidden Trail
Toronto, Ontario
M2R 3R5
Canada

Relief Defendant Birte Boock, <u>pro se</u>
500 Hidden Trail
Toronto, Ontario
M2R 3R5
Canada

DENISE COTE, District Judge:

Plaintiff the United States Securities and Exchange Commission ("SEC"), moves for an entry of judgments establishing equitable and monetary remedies as to defendants Irwin Boock ("Boock"), Stanton B.J. DeFreitas ("DeFreitas"), and Jason C. Wong ("Wong") (collectively, the "Toronto-based Defendants"). The factual background of this litigation was set forth in detail in the Court's Opinion of August 25, which granted in part the SEC's motion for summary judgment against defendant Wong.  See <u>SEC v. Boock, et al.</u>, No. 09 Civ. 8261 (DLC), 2011 WL 3792819 (S.D.N.Y. Aug. 25, 2011) (the "Summary Judgment Opinion").  Familiarity with that Opinion is assumed.

Briefly stated, the SEC brought this action against five defendants -- Boock, DeFreitas, Wong, Nicolette D. Loisel ("Loisel"), and Roger L. Shoss ("Shoss") -- alleging a securities fraud scheme whereby these individuals hijacked defunct or inactive corporations, issued unregistered stock and sold the securities in violation of the antifraud and registration requirements of the federal securities laws.  On March 26, 2010, the Court entered a default as to Boock and DeFreitas and imposed permanent injunctions and penny-stock bars

as to both of them and an officer-and-director bar as to Boock. The action is stayed with regard to the SEC's claims against Loisel and Shoss pending the resolution of criminal proceedings against them.

As noted, on August 25, the Court entered summary judgment as to Wong on the SEC's claims under Section 17(A) of the Securities Act of 1933, 15 U.S.C. § 77q(a) ("Section 17(a)"); Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("Section 10(b)"); and Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Rule 10b-5").  With respect to the SEC's claims under Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e(a) ("Section 5"), the Court granted summary judgment in part, finding that the evidence established Section 5 violations by Wong as to only 12 of the 23 companies that were hijacked pursuant to the scheme.  See Summary Judgment Opinion, 2011 WL 3792819, at *19.  Wong's motion for reconsideration of the Summary Judgment Opinion was denied on November 9, 2011.  See SEC v. Boock, et al., No. 09 Civ. 8261 (DLC), 2011 WL 5417106 (S.D.N.Y. Nov. 9, 2011).

Having conducted additional discovery in an effort to trace the proceeds of the scheme, the SEC now petitions the Court for the following remedies as to the Toronto-based Defendants: 1) permanent injunctions and penny-stock bars as to Boock, DeFreitas, and Wong; 2) officer-and-director bars as to Boock

3

and Wong; 3) joint and several liability for disgorgement in the amount of $6,140,172 and prejudgment interest in the amount of $2,062,282 as to Boock, DeFreitas, and Wong; and 4) civil penalties in the amount of $2,999,000 as to Boock, $1,560,000 as to Wong, and $130,000 as to DeFreitas.

Boock and Wong have opposed the motion for judgments. Because Boock is in default, he lacks standing to challenge the SEC's application. Nonetheless, both Boock's objections and Wong's objections are considered below.


DISCUSSION

Once a violation of the federal securities laws has been found, a district court "has broad equitable power to fashion appropriate remedies." SEC v. First Jersey Securities, Inc., 101 F.3d 1450, 1474 (2d Cir. 1996). Among these remedies are permanent injunctive relief, a penny-stock bar, civil penalties, disgorgement and prejudgment interest. See id. at 1474-78.

I. Permanent Injunction as to Wong

Section 21(d) of the Exchange Act and Section 20(b) of the Securities Act authorize a court to enjoin future violations of the securities laws. See 15 U.S.C. §§ 78u(d), 77t(b). A permanent injunction is appropriate in SEC enforcement cases where "'there is a likelihood that, unless enjoined, the violations will continue.'" First Jersey, 101 F.3d at 1477

4

(quoting Commodity Futures Trading Commission v. American Board of Trade, Inc., 803 F.2d 1242, 1250-51 (2d Cir. 1996)).  A permanent injunction may be particularly appropriate where a violation was "founded on systematic wrongdoing, rather than an isolated occurrence," or involved a "high degree of scienter." Id. (citation omitted).

    Because the March 26, 2010 Order imposed permanent injunctions and penny-stock bars as to DeFreitas and Boock, it only remains for the Court to consider the propriety of similar relief as to Wong.  Wong resists the imposition of a permanent injunction, arguing primarily that he poses no threat to the public going forward.  That assertion, however, is belied by the record.  Wong's fraudulent behavior did not arise from a single, isolated incident, but rather represented a continuing course of wrongful conduct lasting for more than two years.  The record further reflects that Wong acted willfully and knowingly in carrying out the fraud.  See Summary Judgment Opinion, 2011 WL 3792819, at *24.  Because of his history and experience in the penny stock industry, there is reason to believe that Wong might attempt to return to investment activity in the future.  Based on the above facts, there is a likelihood that, unless enjoined, Wong will continue to violate the federal securities laws.  Accordingly, the SEC's request to enjoin Wong permanently from

future violations of Section 10(b), Rule 10b-5, Section 17(a), and Section 5 of the Securities Act is granted.

II.  Penny-Stock Bar and Officer-and-Director Bar as to Wong

Section 20(e) of the Securities Act and Section 21(d)(2) of the Exchange Act authorize the court to bar a violator of the securities laws from serving as an officer or director of a publicly held company if the court determines that "the person's conduct demonstrates unfitness" to serve as an officer or director.  See 15 U.S.C. §§ 77t(e), 78u(d)(2).  In making that determination, the court must consider ""(1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." SEC v. Patel, 61 F.3d 137, 141 (2d Cir. 1995) (citation omitted).  The standard for imposing a penny-stock bar pursuant to Section 20(g) of the Securities Act and Section 21(d)(6) of the Exchange Act, 15 U.S.C. §§ 77t(g), 78u(d)(6), "essentially mirrors that for imposing an officer-or-director bar."  SEC v. Universal Exp., Inc., 475 F. Supp. 2d 412, 429 (S.D.N.Y. 2007).

As discussed, Wong's conduct was blatantly unlawful and not at all isolated.  Wong was listed as an officer or director of several of the companies involved in the scheme, positions he

exploited for his own benefit and that of his co-conspirators. Summary Judgment Opinion, 2011 WL 3792819, at *3.  Though Wong continues to insist that he never consented to the use of his name, the Court found otherwise in its Summary Judgment Opinion. Id. at *12-*14.  Wong not only consciously engaged in the fraud, he also profited from it, both by selling shares of the hijacked issuers at inflated prices and by requiring compensation for promotion and other services he performed.  Id. at *6, *24.  He acted willfully and knowingly, and there is a serious risk that, if not enjoined, he would engage in similar fraudulent conduct again.  The record therefore justifies the imposition of officer-and-director and penny-stock bars as to Wong.[1]

III.  Disgorgement

    The SEC also seeks a disgorgement order holding Boock, DeFreitas, and Wong jointly and severally liable for $6,140,172 in illegal proceeds.  As explained in the Summary Judgment Opinion, "disgorgement is a well-established remedy in the Second Circuit, particularly in securities enforcement actions."

---

[1] In opposing the SEC's motion for a penny-stock bar, Wong maintains that the record does not establish that any of the securities involved in the scheme qualified as penny stocks.  A penny stock is any equity security that has a price of less than five dollars, except as provided in Rule 3a51-1 under the Exchange Act.  See 17 C.F.R. § 240.3a51-1.  The record establishes conclusively that the hijacked issuers, none of which met the exceptions in Rule 3a51-1, traded for well under five dollars per share.  Indeed, Wong's own trades in the hijacked issuers using his Royal Bank of Canada account averaged just $.00629 per share.

SEC v. Cavanagh, 445 F.3d 105, 116-17 (2d Cir. 2006).  In
ordering disgorgement, a court will engage in fact-finding "to
determine the amount of money acquired through wrongdoing -- a
process sometimes called 'accounting'" and issue an "order
compelling the wrongdoer to pay that amount plus interest."  Id.

A.   Joint and Several Liability

     When two or more defendants collaborate in the illegal
conduct and liability must be apportioned among them, courts
have the discretion to impose joint and several liability up to
the amount of their combined income from illegal conduct.  SEC
v. AbsoluteFuture.com, 393 F.3d 94, 97 (2d Cir. 2004).  Joint
and several liability is particularly appropriate where
"apportionment [of the disgorgement amount] is difficult or even
practically impossible because [the] defendants have engaged in
complex and heavily disguised transactions" in an effort to
conceal their fraud.  SEC v. Hughes Capital Corp., 124 F.3d 449,
455 (3d Cir. 1997).

     Boock objects to joint and several liability on the ground
that it allows the SEC to "paint all of the defendants with the
same brush."  But he has offered no evidence to rebut the SEC's
argument that joint and several liability is appropriate here.
To the contrary, the evidence establishes that in perpetrating
their fraud, Boock, DeFreitas, and Wong worked closely together,
transferring cash and stock among them and maintaining frequent

8

contact by telephone and e-mail.  They also sought to frustrate efforts to trace the proceeds of their illegal activity to any one of them by using offshore accounts, cash payments, stolen identities and aliases.  Joint and several liability is thus appropriate here.

Recognizing, as Boock does not, that the threshold requirements for joint and several liability are met here, Wong takes a different tack.  He notes that the SEC's application for disgorgement identifies trading profits that accrued to him in the first instance through his sale of stock in certain hijacked issuers.  From this Wong concludes that his gain from the fraudulent scheme is capable of apportionment and that, accordingly, joint and several liability is inappropriate as to him.  But the SEC has never asserted that Wong profited from the scheme only through trades in which he was directly involved.  Indeed, as noted above, Wong also received compensation for his fraudulent promotion activities through Select American Transfer (SAT), a transfer agency Boock incorporated to facilitate the fraud.  Nor has Wong carried his burden of demonstrating that he did not receive any of the proceeds from the scheme through some other avenue such as cash payments or transfers from accounts controlled by his co-conspirators.  See Hughes, 124 F.3d at 455 ("[T]he burden is on the tortfeasor to establish that the liability is capable of apportionment.")  In sum, because Wong

9

participated with Boock and DeFreitas both in perpetrating the fraud and in disguising the trail of the profits that accrued from it, it is appropriate to hold the three of them jointly and severally liable for any disgorgement judgment.

B.  Disgorgement Amount

In fixing the size of any disgorgement award, the Court need only arrive at "a reasonable approximation of profits causally connected to the violation.  So long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created the uncertainty." SEC v. Warde, 151 F.3d 42, 50 (2d Cir. 1998) (citation omitted). Moreover, because "the primary purpose of disgorgement orders is to deter violations of the securities laws by depriving violators of their ill-gotten gains, . . . the size of a disgorgement order need not be tied to the losses suffered by defrauded investors."" Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC, 467 F.3d 73, 81 (2d Cir. 2006) (citation omitted).

The Toronto-based Defendants earned illegal revenues from their fraudulent scheme in two ways.  First, as discussed, they used the hijacked companies to issue unregistered shares into the market, the sale of which generated substantial profits. Second, they sold the hijacked issuers to various third-parties.

With respect to the sale of unregistered shares, the
defendants amassed their illegal gains through at least five
different avenues.  First, shares of hijacked issuers were
deposited into offshore trading accounts that were under the
control of DeFreitas.  The record indicates that in the first
half of 2007, $2,360,072 in proceeds from the sale of
unregistered shares was deposited into these accounts.  The
defendants also used a Scottrade account opened in the name of a
company, For Better Living, to deposit and liquidate shares of
four hijacked issuers, resulting in proceeds totaling $280,500.[2]
In addition, as discussed in the Summary Judgment Opinion, Wong
used trading accounts at the Royal Bank of Canada to sell
unregistered shares in the hijacked issuers, resulting in
proceeds of $82,600.  Records collected by the SEC also
establish that the defendants used accounts in the names of two

---

[2] In his opposition papers, Boock argues that the SEC overstates
the revenues attributable to the Scottrade account, noting that
while the SEC has determined that only "some $160,000 was raised
selling certain securities" from that account, $120,000 was sent
to DeFreitas.  Boock misunderstands the SEC's argument.  The
evidence establishes that the defendants sold more than 30
million shares from the Scottrade account, resulting in proceeds
of $280,500.  The $160,500 figure that Boock emphasizes is the
SEC's calculation of the revenues attributable to the Scottrade
account after the $280,500 total is reduced to account for
$120,000 that was transferred to DeFreitas's offshore accounts.
Because the analysis above accounts for the $120,000 as revenue
attributable to the Scottrade account rather than the DeFreitas
accounts, the full $280,500 sum is used and a correspondingly
lower sum is attributed to the DeFreitas accounts.

nominees -- Alena Dubinsky and Elena Lazareva -- to sell shares in the hijacked issuers for proceeds of at least $1,117,000.

Except for the meritless objections noted above, Boock's only argument with regard to these calculations is that they are based, in part, on statements of DeFreitas, whose credibility Boock questions. But Boock has provided no evidence to rebut the calculations of the SEC, nor has he explained what motive DeFrietas might have to overestimate a disgorgement amount for which he will be jointly and severally liable.

Wong challenges this portion of the SEC's disgorgement calculation on the ground that it includes proceeds from the scheme that were not derived from the Section 5 violations for which the Court found Wong liable in the Summary Judgment Opinion. As noted above, however, Wong's violation of the anti-fraud provisions of the securities laws exposes him to joint and several liability for the proceeds of the scheme as a whole. Wong also argues that the disgorgement calculation should be reduced to account for securities that he sold at a loss, but in awarding disgorgement, "where the profits from fraud and the defendant's ill-gotten gains diverge, the district court may award the larger sum." FTC v. Bronson Partners, LLC, 654 F.3d 359, 375 (2d Cir. 2011); accord SEC v. DiBella, 587 F.3d 553, 572 (2d Cir. 2009). Here, the record establishes conclusively

that defendants' collective gains from their sale of unregistered shares totaled at least $3,840,172.

As discussed, the defendants' fraudulent conduct was not limited to using the hijacked companies to issue unregistered shares of stock; they also resold them as shell entities to various third parties.  In a sworn declaration, DeFreitas affirmed that the proceeds from the sales of the 23 shell companies identified in the Summary Judgment Opinion exceeded $2.3 million.  This assertion is supported by the other evidence in the record, including the declaration of Jean-Francois Amyot, who purchased many of the shells, as well as records regarding individual sales.

Taken together, the evidence thus establishes that the proceeds from the defendants' sale of unregistered shares and hijacked issuers totaled at least $6,140,172.  That number represents "a reasonable approximation of profits causally connected to the violation," Warde, 151 F.3d at 50, and it is therefore appropriate to impose a disgorgement award in that amount.

IV.  Prejudgment Interest

Once a court determines that disgorgement is appropriate, it has the discretion to add prejudgment interest to the disgorgement amount.  In deciding whether an award of prejudgment interest is warranted, a court should consider "(i)

13

the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." <u>First Jersey</u>, 101 F.3d at 1476 (citation omitted).  In an enforcement action brought by a regulatory agency, however, "the remedial purpose of the statute takes on special importance." <u>Id.</u>  "[E]ven if litigation was protracted through some fault of the SEC, the award of prejudgment interest for the entire period is proper because defendant had use of unlawful profits for the entire period." <u>Warde</u>, 151 F.3d at 50 (citation omitted).

Prejudgment interest is appropriate here in order to vindicate fully the remedial purposes of the securities laws. The defendants' illegal conduct was flagrant and longstanding. Moreover, since at least August 16, 2006, the date of last hijacking, the defendants have had use of their illegally generated profits.  Applying the IRS underpayment rate to the $6,140,172 disgorgement award calculated above, defendants will be held jointly and severally liable for $2,144,462 in prejudgment interest, calculated from August 16, 2006, to the date of this opinion, August 2, 2012.[3]

---

[3] Although Wong argues that a more favorable interest rate should be applied in light of prevailing market conditions, it is well

V.  Civil Penalties

     The SEC also seeks the imposition of civil penalties
against Boock, DeFreitas, and Wong.  The Securities Act and the
Exchange Act authorize a court to impose civil monetary
penalties for violations of the securities laws in three tiers.
Tier III penalties are available if the violation involved
"fraud, deceit, manipulation, or deliberate or reckless
disregard of a regulatory requirement" and the violation
"resulted in substantial losses or created a significant risk of
substantial losses to other persons."  15 U.S.C.
§§ 77t(d)(2)(C), 78u(d)(3)(B)(iii).  For violations occurring
after 2005 but before March 3, 2009, the inflation adjusted
maximum for third tier penalties is $130,000 per violation.  See
17 C.F.R. Pt. 201, Subpt. E, Tbl. I.

     A monetary penalty is designed to serve as a deterrent
against securities law violations, SEC v. Palmisano, 135 F.3d
860, 866 (2d Cir. 1998), and courts thus have broad discretion
to determine the appropriate amount of any penalty in light of
the facts and circumstances surrounding each defendant's role in
the violations.  See SEC v. Cavanagh, No. 98 Civ. 1818 (DLC),
2004 WL 1594818, at *31 (S.D.N.Y. July 16, 2004).  In
determining what penalty to impose, courts look to the following

established that when disgorgement is ordered in an SEC-
initiated proceeding, the IRS underpayment rate is appropriate.
First Jersey, 101 F.3d at 1476.

factors: (1) the egregiousness of the violations; (2) a
defendant's scienter; (3) the repeated nature of the violations;
(4) a defendant's failure to admit wrongdoing; (5) whether a
defendant's conduct created substantial losses or the risk of
substantial losses to others; (6) a defendant's lack of
cooperation with authorities; and (7) whether the penalty that
would otherwise be appropriate should be reduced due to a
defendant's demonstrated current and future financial condition.
Id.

      The SEC has requested that Boock be ordered to pay Tier III
penalties at the statutory maximum for each of the 23 issuers
that were hijacked during the Toronto phase of the fraud.  As
the Agency notes, Boock conceived of the fraudulent scheme and
recruited others to participate in it.  He directed his co-
conspirators in how to hijack issuers, market unregistered
shares, and arrange shell deals to profit themselves and him.
Boock also participated personally in the scheme, forging
signatures and incorporating SAT.  The evidence leaves no doubt
that Boock's violations of the securities laws were knowing and
intentional, a conclusion that is reinforced by the fact that he
is a recidivist.  Moreover, to date, Boock has refused to take
responsibility for his conduct or to cooperate in the SEC's
efforts to get to the bottom of his fraud.  Not only has Boock
refused to answer to the charges against him in this Court, he

                                16

has been held in contempt of court for attempting to frustrate the SEC's efforts to trace the proceeds of his illegal conduct. The SEC's application for civil penalties against Boock in the amount of $2,990,000 is therefore granted.

The SEC has recommended somewhat less weighty penalties with regard to Wong, in recognition of the fact that he, unlike Boock, "was neither the ringleader nor architect of the scheme, and is not a known recidivist." Specifically, the agency seeks to impose Tier III penalties on Wong for only the twelve issuers for which the Court, in its Summary Judgment Opinion, found him personally liable under Section 5 of the Securities Act. There is no question that Wong's role in the scheme makes Tier III penalties appropriate. His unlawful conduct was conscious and egregious: lying to various officials, promoting the hijacked issuers to increase the value of their stock, and selling unregistered shares at a substantial profit. Nonetheless, the SEC's penalty recommendation represents a substantial discount from Wong's maximum potential exposure under the securities laws. As recognized in the Summary Judgment Opinion, Wong's unlawful conduct was not limited to the twelve Section 5 violations in which the Court found he was personally involved. Rather, by acting to further the larger goals of the hijacking scheme, Wong violated the anti-fraud provisions of the securities laws and exposed himself to penalties for each of the

17

hijackings that were undertaken pursuant to the scheme.  See
Summary Judgment Opinion, 2011 WL 3792819, at *22-*23.  Wong's
brief in opposition to the SEC's motion for judgments ignores
this aspect of his liability and demonstrates that,
notwithstanding the mountain of evidence that has been amassed
against him, he has yet to acknowledge the full extent of his
role in the fraud or to cooperate in any meaningful way with the
authorities.  Taking these facts into account, along with the
egregious nature of the fraud and the extended timeframe over
which it occurred, the SEC's recommended penalty of $1,560,000
against Wong is appropriate and, indeed, conservative.

Just as Wong's refusal to admit wrongdoing limits the
extent to which his subordinate role in the scheme entitles him
to reduced penalties, so DeFreitas's willingness to accept
responsibility justifies leniency.  The SEC's recommended
penalty of $130,000 against DeFreitas is appropriate in light of
the fact that he has conceded liability and cooperated with the
SEC's investigation and litigation efforts.

VI. Remaining Issues

Finally, in his opposition brief, Wong raises a number of
objections to the evidence that the SEC has offered in support
of its motion for judgments.  Several of these objections were
considered and rejected in the Summary Judgment Opinion.  The
Court has considered the remainder of Wong's evidentiary

18

objections and finds them all to be either insufficiently
targeted or lacking in merit.

In separate submissions dated May 25, 2012, and June 1,
2012, Birte and Irwin Boock, respectively, seek reconsideration
of this Court's June 2, 2011 Order refusing to set aside the
defaults that have been entered against them.  Pursuant to SDNY
Local Civil Rule 6.3, a motion for reconsideration must be
served within fourteen days of the Court's issuance of the
challenged order.  The May 25 and June 1 submissions will thus
be construed as motions for relief from a judgment or order
pursuant to Rule 60(b), Fed. R. Civ. P.  Rule 60(b) relief is
"generally not favored and is properly granted only upon a
showing of exceptional circumstances."  United States v. Int'l
Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001) (citation
omitted).  Birte and Irwin Bock have not made the necessary
showing here.  Their submissions, which are identical in all
material respects, raise various objections to the SEC's proof
regarding the fraud.  They do not explain the Boocks' failure to
participate in the litigation up to this point.  Nor do they
provide cause to believe that, if the Court were to vacate the
defaults, the Boocks would abandon their well-established
practice of disregarding this Court's orders and attempting to
frustrate the SEC's efforts to obtain relief.

CONCLUSION

The SEC's April 12 motion for judgments is granted.  The
May 25 and June 1 motions for reconsideration of Birte Boock and
Irwin Boock, respectively, are denied.


SO ORDERED:

Dated:    New York, New York
          August 2, 2012

                                    _____
                                    DENISE COTE
                           United States District Judge